ROBERT B. DUNN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunn v. Commissioner
Docket No. 10170-75.
United States Tax Court
T.C. Memo 1977-156; 1977 Tax Ct. Memo LEXIS 284; 36 T.C.M. (CCH) 664; T.C.M. (RIA) 770156; May 24, 1977, Filed Thomas W. Hardin, for the petitioner. Wesley J. Lynes, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined the following deficiencies in petitioner's income taxes: Addition to Tax Year
Deficiency
Sec. 6653(a)
1971
$73,941.21
$3,697.06
1972
4,684.57
234.23
The sole issue remaining for our determination is whether petitioner realized taxable income when he transferred appreciated property to his wife pursuant to a divorce decree in exchange for his wife's renouncement of her marital rights. Pursuant to Rule 122, Tax Court Rules of Practice and Procedure, the parties stipulated facts and attached exhibits which we incorporate by this reference. Petitioner Robert B. Dunn resided in Atlanta, Georgia at the time he filed his *285 petition in this case. On August 21, 1975, respondent mailed petitioner a deficiency notice. Of the adjustments listed on the notice petitioner has conceded all but those for 1971 involving capital gains and interest income from notes. Petitioner timely filed his 1971 federal income tax return with the Director, Internal Revenue Service Center, Southeast Region, Chamblee, Georgia. As of January 1, 1971, petitioner was the sole stockholder in Maury Steel, Inc., a Tennessee corporation. Petitioner's adjusted basis in the 9,000 shares of stock which were outstanding was $12,500. On January 23, 1971, Wayne Dunn, petitioner's son, purchased 2,000 of these shares for $100,000. He paid for the shares with a promissory note in that amount with interest at 7 percent per annum. Wayne Dunn made no payments on this note in 1971. On the same day, Maury Steel, Inc. redeemed the remaining 7,000 shares of its common stock at $47.50 per share. Petitioner received $57,500 in cash and a note in the amount of $275,000 with interest at 7 percent per annum. In 1971, after 34 years of marriage, petitioner's wife Henrietta C. Dunn instituted a divorce proceeding against him. The Circuit *286 Court for Maury County, Tennessee formalized the divorce on October 2, 1971. Its judgment included a property settlement agreement which the parties had entered into on September 8, 1971, as well as findings made at a hearing on September 11, 1971. On September 11, 1971, the parties divided the property pursuant to the property settlement agreement. We take note of the fact that during petitioner's marriage he and his wife had three children, that during this period he formed and developed Maury Steel, Inc., and that he supplied the principal support for his family. Henrietta's contribution to the support of the family was inconsequential. Petitioner and his wife divided the sum of their property equally pursuant to the property settlement agreement. The section of the agreement dividing the notes in question follows: a. Robert B. Dunn is the owner and holder of a promissory note in the principal amount of $275,000.00, dated January 23, 1971, given by Maury Steel, Inc. The note is payable in quarterly installments of $6,250.00, including interest at the rate of 7%. Two (2) payments have been made on this note, with the third payment being due September 30, 1971. The *287 unpaid balance, therefore, is $262,500.00 plus $4,593.75 accrued interest as of September 30, 1971.
The parties desire to use this note to equalize the distribution of their joint assets. In the ensuing section an appropriate division is made with the wife taking 40.6 per cent and the husband taking 59.4 per cent of $108,512.00 and $158,582.00 respectively. b. Robert B. Dunn is also the owner and holder of a promissory note in the principal amount of $100,000.00 dated January 23, 1971, given by Wayne Dunn. * * * The parties agree that this note shall hereafter be owned by them equally and as tenants in common. * * * [Emphasis supplied] As of September 30, 1971, petitioner's portion equaled $158,582 (principal of $155,925 plus interest accrued) and Henrietta's equaled $108,512 (principal of $106,575 plus interest accrued). [1]
During 1971 Maury Steel, Inc. made the following payments to petitioner: Date
Principal
Interest
March 31, 1971
$6,250
$4,812.50
June 30, 1971
6,250
4,703.13
September 30, 1971
3,712
2,728.69
December 31, 1971
3,712
2,663.72
*288 Respondent determined that petitioner realized taxable income when he transferred portions of notes and interest accrued thereon to his wife pursuant to the property settlement agreement. Petitioner contends that his former wife had sufficient incidences of ownership in the notes so as to make the transfer a nontaxable division of property. We disagree.
We gather from petitioner's brief that he agrees with respondent's statement that Tennessee is a common law rather than a community property state and that Tennessee recognizes separate ownership of property by spouses. See Matthews v. Matthews,24 Tenn. App. 580, 148 S.W. 2d 3, 13 (1940). In addition, the parties agree that petitioner furnished the principal support for the family and that Henrietta's contribution to the support was inconsequential. Despite these two areas of agreement petitioner claims that the longevity of his marriage, the language in the property settlement agreement and case law support his contention. As for the language in the property settlement agreement we draw the opposite conclusion. The section dividing the notes does not list jointly owned property which was to be distributed *289 individually but rather describes individually owned property which was to be distributed jointly. In addition, we note from the agreement that Henrietta gave up valuable rights: alimony, support, and rights of inheritance, descent, distribution, dower, and homestead. In Parts V and VI of the property settlement agreement the parties agreed that: Miscellaneous
a. Henrietta C. Dunn may prosecute so much of the case of Henrietta Chatham Dunn v. Robert Browning Dunn, et al, No. 7299, Circuit Court of Maury County, as seeks an absolute divorce and related relief, but will dismiss all remaining portions and will seek neither alimony nor support. * * *
Mutual Release of Marital Property Rights
In consideration of this full and complete property settlement each of the parties hereto does hereby renounce any and all rights, claims, or demands that either may now or hereafter have against the property or assets of the other, including all rights of inheritance, descent, distribution, dower, curtesy, homestead or maintenance. We find the Court's statement in United States v. Davis,370 U.S. 65, 72 (1962) applicable: It must be assumed, we think, *290 that the parties acted at arm's length and that they judged the marital rights to be equal in value to the property for which they were exchanged. There was no evidence to the contrary here. Absent a readily ascertainable value it is accepted practice where property is exchanged to hold, as did the Court of Claims, * * * 126 F. Supp. 184, 189, * * * that the values "of the two properties exchanged in an arms-length transaction are either equal in fact or are presumed to be equal." * * * Nonetheless, petitioner asserts that pursuant to state law his wife had a property interest in the notes at issue and that the transfer was a division of their joint property rather than a taxable event. Petitioner cites Collins v. Commissioner,412 F.2d 211, 212 (10th Cir. 1969), in support of his position. In that case the Tenth Circuit held that state law controls property rights and looked to an Oklahoma case, Collins v. Oklahoma Tax Commission,446 P. 2d 290 (1968), for that control. The state case interpreted 12 Okl. Stat. Ann. sec. 1278 to mean that a wife has an interest in property acquired during marriage "similar in conception to community *291 property of community property states, and is regarded as held by a species of common ownership." 12 Okl. Stat. Ann. sec. 1278 states, in part, as follows: As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. * * * Using the state court's interpretation of this statute, the court in Collins v. Commissioner, supra, then concluded that the wife in Oklahoma held the property in common ownership with her husband. Tennessee has no such court decision. Kittrell v. Kittrell,56 Tenn. App. 584, 409 S.W. 2d 179 (1966), cited by petitioner, offers a good history of a wife's right to property in Tennessee. The court in awarding property held by a couple as tenants by the entirety looked to prior contributions by *292 both parties. After ascertaining that the wife had made no contributions to the property even though she had had income, the court awarded the property to the husband. The holding in Kittrell v. Kittrell,supra, demonstrates the thrust of Tenn. Code Ann. sec. 36-825 (1959) which we think petitioner incorrectly cites as authority for his contention that Henrietta was a co-owner with the petitioner in the two notes. Tenn. Code Ann. sec. 36-825 (1959) reads as follows: 36-825. ADJUSTMENT OF INTERESTS IN JOINTLY OWNED PROPERTY. -- In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, in its discretion, adjust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned property as may be just and reasonable under the facts and circumstances of the case, regardless of how the court may grant or refuse to grant relief in such case; and to this end the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale *293 of such property and to order the proceeds divided between the parties. This statute does not create a new property right. Prior to its promulgation the courts could not go behind the record title to adjust the rights of divorcing parties in jointly owned property.See Brown v. Brown,160 Tenn. 685, 28 S.W. 2d 350 (1930), cited by petitioner. As explained in Witherspoon v. Witherspoon,55 Tenn. App. 484, 402 S.W. 2d 492, 494 (1965), cited by petitioner, the purpose of Tenn. Code Ann. sec. 36-825 is "to allow the court more latitude in dividing the property between husband and wife and in divesting and reinvesting title." The courts can now consider substance over form in dividing property. For example, in Langford v. Langford,220 Tenn. 600, 421 S.W. 2d 632 (1967), cited by petitioner, the court determined that the property held individually and jointly by the spouses was accumulated by their joint efforts over a period of some years and thus was joint property. This interest did not arise merely from the marital relationship but from the fact that both parties had contributed to its accumulation. There is no evidence that *294 Henrietta contributed to the acquisition of the property transferred to her in the divorce proceeding. To the contrary, the parties stipulated that petitioner supplied the principal support of the family and that Henrietta's contribution was inconsequential. Petitioner cites several other cases in support of his argument that Henrietta was possessed of some species of co-ownership in the property; however, the relevance of these cases is obscure. In two of them, Lambros v. Commissioner,459 F.2d 69 (6th Cir. 1972); and Mills v. Commissioner,442 F.2d 1149 (10th Cir. 1971), the issue was whether payments made by petitioners to their wives were deductible as alimony. In the divorce proceedings, the courts made a determination of each spouse's property rights; however, instead of distributing the property itself to the wives, the courts required the husbands to pay them amounts equal to their shares. The federal courts held that these payments were part of a property settlement and were not alimony. Dawson v. Dawson,23 Tenn. App. 556, 135 S.W. 2d 458 (1939), dealt with the husband's duty to support a child born after divorce. *295 The court in Schwalb v. Schwalb,39 Tenn. App. 306, 282 S.W. 2d 661 (1955), determined whether a wife, at fault in the divorce proceeding, was entitled to dower and held that she was not so entitled under sec. 8449, now Tenn. Code Ann. sec. 36-826 (1958). The court in Robinson v. Trousdale County,516 S.W. 2d 626 (1974), held that a deed executed by the husband alone does not convey the wife's interest in property held as tenants by the entirety. The petitioner is attempting to create an illusion -- a property right akin to co-ownership -- from the recesses of irrelevant case law. The cases cited by the petitioner that are relevant show just the opposite - Henrietta had no co-ownership rights in the two notes as she would have had in states that recognize some other species of co-ownership, as does Oklahoma ( Collins v. Commissioner,supra). Rather, in Tennessee, Henrietta's only rights to the two notes were acquired through the property settlement agreement and the divorce decree. The petitioner and Henrietta had certain rights which had to be considered in the property settlement agreement. It was agreed between the parties *296 that, regardless of who contributed the property to the marriage, and the record shows that petitioner had contributed the lion's share, there would be an equal distribution. Henrietta received more than she contributed in tangible property, but petitioner, by the terms of the property settlement agreement and the plain language of the decree, took something else - Henrietta's renouncement of her marital rights. He gave, as consideration, property valued at $156,575, in which he had a basis of $4,578, and the right to receive, in 1969, $1,865 in interest income. This is a taxable event. Decision will be entered for the respondent. Footnotes
1. The parties have stipulated that the unpaid interest accrued on $106,575 at the date of settlement was $1,865.06.↩